Susanne Arani, Esq. (California SBN:  238891)
799 Fieldstone Lane
Encinitas, CA  92024
Telephone: (760) 331-8426
susarani@gmail.com
*Admitted Pro Hac Vice*

Attorney for Defendants, Emmett Moore, and
Tradingschools.org

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| MAVERICK TRADING, INC.,<br><br>                              Plaintiff,<br>v.<br><br>EMMETT MOORE; and<br>TRADINGSCHOOLS.ORG,<br>                              Defendants. | **DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND CALIFORNIA'S SPECIAL MOTION TO STRIKE**<br><br>Case No.  2:19-CV-00203-TC-PMW<br><br>District Judge: Hon. Tena Campbell<br>Chief Magistrate Judge:  Hon. Paul M. Warner |

Defendants request that this Court apply California's strategic lawsuit against public participation ("anti-SLAPP") statute to Plaintiff's causes of action for defamation and other causes of action.  Plaintiff's causes of action are all barred by the statute of limitations. Nevertheless, Plaintiff still cannot prevail on their causes of action as a matter of law and because Plaintiff asserts insufficient facts in support of its claims.  As such, this Court should grant Defendants' motion to strike under California law.

## I. INTRODUCTION

Defendants Emmett Moore and Tradingschools.org ("Defendants") bring this motion to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) and California's anti-SLAPP statute.

Cal. Civ. Proc. Sec. 425.16.  The United States Court of Appeals for the Ninth Circuit recently opined that a special motion to strike under Section 425.16 may be analyzed under Fed. R. Civ. P. 12 in federal court when the issues raised are legal arguments based on Plaintiff's complaint. Planned Parenthood Fed'n of Am. V. Ctr. for Med. Progress, 890 F.3d 828, 834 (9th Cir. 2018). As noted in more detail below, Defendants raise substantive legal arguments to Plaintiff's complaint under the California anti-SLAPP statute, and do so under a Fed. R. Civ. P. 12(b)(6) motion.

In furtherance of Defendants' motion, Defendants will show that the choice of law under Utah standards heavily weighs in favor of applying California's anti-SLAPP statute.  This is true given the minimal and insignificant contacts Defendant Emmett Moore has had with the state of Utah, that he and Defendant tradingschools.org are residents of the state of California, and the fact the alleged injurious statements, published in an internet blog article, were authored and published from the state of California.

Most importantly, Defendants will show a right to dismissal under the anti-SLAPP statute because the statements complained of in Plaintiff's complaint were all written on or about **March 27, 2017**.  (See Pl.'s Compl. at ¶47, ECF No.: 2).  Plaintiff's complaint was filed two years later on March 27, 2019, therefore falling wildly outside the statute of limitations for defamation in Utah.  As such, Plaintiff cannot maintain their causes of action against Defendants under a statute of limitations test and other aspects of California's anti-SLAPP statute.

Defendants will show that if they prevail on one or more of the causes of action, they are entitled by law to attorney fees in having to bring and prevail on part or all of the motion.  In the

2

alternative to an order based on California's anti-SLAPP statute, Defendants request this Court

dismiss Plaintiff's complaint with prejudice pursuant to Fed. R. Civ. Proc. 12(b)(6).

## II. FACTUAL BACKGROUND

Plaintiff's March 27, 2019, complaint alleges numerous injurious statements made by

Defendants against Plaintiff that originate from a single article published on the internet two

years prior on March 27, 2017.  Id.  However, Plaintiff decided to thereafter stylize the March

2017 publication on tradingschools.org as one from 2018 throughout their entire complaint,

without a reasonable explanation, and without stating the publication was from any time other

than March of 2017.  Id. at ¶¶ 47-48.

Plaintiff brings causes of action for defamation, interference with prospective economic

advantage, false light, product disparagement, trade libel and a claim under Utah's Truth in

Advertising Act.  Plaintiff alleges that they are a Utah corporation with a principal place of

business in Utah.  Id. at ¶ 3.  Plaintiff also alleges that Defendants are located in the state of

California.  Id. at ¶¶ 4-5.  Plaintiff agrees that Defendants are content publishers on the internet

regarding Plaintiff, and that the internet article goes to the quality of Plaintiff's products and

services.  Id. at ¶¶ 47, 48, 51, 55.

Plaintiff does not dispute the obvious inference that the blog article in question was

written in the state of California.  Plaintiff admits that both defendants are residents of the state

of California and that it was published online.  Id. at ¶¶4-5. Therefore, there can be no reasonable

dispute from Plaintiff's complaint that the articles were written and authored in California.

Furthermore, Plaintiff makes no allegations that Defendants have any business or personal

contacts with the state of Utah, that they conduct any business transactions in the state, or that

Defendant Emmett Moore has even traveled to the state.  Lastly, the subject of Plaintiff's

complaint is an online article that presumably has a worldwide English-speaking readership.

Assuming only the population of the United States and Utah, Defendants' estimate of their Utah

readership would constitute less than one percent or approximately .94% of his total U.S.-based

readership. (See Request for Judicial Notice "RFJN", Nos. 1 & 2, at Ex. 1).

**III.  ARGUMENT**

> **A.  Conflict and Choice of Law Analysis Results in Favor of Applying California's**
> **Anti-SLAPP Statute.**

>> 1.  California's anti-SLAPP statute is substantive and does not conflict with this
>> Court's application of the Federal Rules of Civil Procedure.

The *Erie Doctrine* requires that a court in a diversity case apply state substantive law and

federal procedural law.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  Courts have

routinely found in federal courts in California and this circuit that the anti-SLAPP law's

substantive aspects may be applied in federal court.  See Planned Parenthood Fed'n of Am., 890

F.3d at 834 (finding a motion based on legal conclusions under California's anti-SLAPP without

affirmative evidence may be considered under Fed. R. Civ. P. 12(b)(6)); see gen Diamond Ranch

Academy, Inc. v. Filer, 117 F.Supp.3d 1313, 1318 (D. Utah 2015)(applying California's anti-

SLAPP statute in a diversity action in Utah); see USANA Health Sciences, Inc. v. Minkow, Case

No. 2:07–cv–159–TC, 2008 WL 619287 (Mar. 4, 2008)(applying California anti-SLAPP in

diversity action in Utah district court); see Caranchini v. Peck, 355 F. Supp.3d 1052,1061 (D.

Kan. 2018)(noting the Kansas anti-SLAPP statute was applicable in federal court because it, "'it

exist[s] to influence substantive outcomes and is so bound up with the state-created right or

remedy that it defines the scope of that substantive right or remedy.'") In <u>Caranchini</u>, the court also noted that its decision to apply the Kansas anti-SLAPP statute in the tenth circuit was in part based on its finding that unlike the statute in <u>Los Lobos Renewable Power, LLC v. Americulture, Inc.</u>, 885 F.3d 659 (10th Cir. 2018) which was a procedural or timing statute, the Kansas statute, and also California anti-SLAPP statute, have significant substantive components, and it could be applied.  <u>Caranchini</u>, 355 F.Supp.3d at 1060-1061.

Aside from the courts, including this Court, that have applied the California anti-SLAPP statute, it is clear that the California anti-SLAPP statute is substantive in its nature.  The California anti-SLAPP is designed to prevent a defendant from having to litigate a case where privileged speech, on a matter of public interest in a public forum, exists.  <u>Diamond Ranch Academy, Inc.</u>, 117 F.Supp.3d at 1318 (citing <u>Batzel v. Smith,</u> 333 F.3d 1018, 1025 (9th Cir. 2003)); <u>see</u> <u>also</u> <u>Caranchini</u>, 355 F.Supp.3d at 1058 (noting and quoting SLAPP statutes are often enacted to "decrease the chilling effect of certain kinds of libel litigation and other speech-restrictive litigation").

Defendants have made a timely motion under Fed. R. Civ. P. 12(b)(6).  Therefore, this Court should apply the substantive aspects of California's anti-SLAPP staute to this case for reasons further explained *infra*.

2.  The California anti-SLAPP and Utah anti-SLAPP statutes conflict.

In order for a choice of law analysis to commence, there should be a conflict between the forum state and the law of the state in question.  <u>Diamond Ranch Academy, Inc.,</u> 117 F.Supp.3d 1320 (citing <u>One Beacon Am. Ins. Co. v. Huntsman Polymers Corp.</u>, 276 P.3d 1156, 1165 n. 10 (Utah Ct. App. 2012)).

In California, Section 425.16 allows a court to strike any cause of action based on, "[a]ny act . . .in furtherance of [a]person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," unless the court determines that the plaintiff has established there is a probability that he or she will prevail on the claim.  Id. at 425.16(b)(1).  An act is considered in furtherance of a person's right to petition or free speech if it is a written statement, made in a public forum, that is in connection with an issue of public interest.  Id. at 425.16(e), (e)(3).  In addition, under the statute, the moving party has the initial burden to show that the cause of action arises from an act in furtherance of the moving party's right of petition or free speech.  Salma v. Capron, 161 Cal.App.4th 1275, 1283 (2008). Once a defendant meets his or her burden, the plaintiff must show the likelihood of prevailing on each of his or her claims. Id.

In contrast, the Utah anti-SLAPP statute only protects persons involved in a "governmental process" that is defined by statute as, "[m]echanisms and procedures by which the legislative and executive branches of government make decisions, and the activities leading up to the decisions, including the exercise by a citizen of the right to influence those decisions under the First Amendment to the U.S. Constitution."  Utah Code Ann. Sec. 78B-6-1402(4). Further, a person would still have to show by clear and convincing evidence that the offending complaint was meant to interfere with the first amendment right of the declarant and that its primary purpose was to interfere with or chill participation in the "process of government."  Id. at Sec. 78B-6-1404(1)(b) and 1404(2).

Here, Defendants are not alleged to be members of Utah government, nor any elected or appointed office for that matter.  The clear intent and result of the California anti-SLAPP statute

is to protect freedom of speech, wherever it may occur--whether in a government proceeding or a person in their own home.  Utah's anti-SLAPP is much more restrictive in that it defines the very type of speech that is protected, whereas California's statute protects all speech so long as it is made in a public forum in a matter of public interest.  Utah also requires an evidentiary burden for the moving party that is higher than that of the California anti-SLAPP.  It is doubtful that a resident of California would ever be able to avail themselves of Utah's anti-SLAPP law given the statutory constraints and it is unlikely that Defendants in this case would avail themselves of its protection as well.  As such, there is a clear conflict between the two anti-SLAPP statutes.

     3.  California has the more significant relationship to the occurrence of acts at issue in Plaintiff's complaint.

In a federal action based on diversity, a court should apply the conflict of rules of the forum state.  Shady Grove Orthopedic Assocs. P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010).  In Utah, the law of the state that has the most significant relationship to the events in question determines the rights and responsibilities of the parties.  Restatement (Second) of Conflict of Laws Sec. 145 and Restatement (Second) of Conflict of Laws Sec. 145(1)(1971). The Court considers four factors: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and 4) the place where the relationship between parties is centered. Diamond Ranch Academy, Inc., 117 F.Supp.3d at 1321(citing Waddoups v. Amalgamated Sugar Co., 54 P.3d 1054 (Utah 2002).  In free speech cases, the domicile of the speaker and where the speech took place are central to a choice of analysis issue. Chi v. Loyola Univ. Med. Ctr., 787 F.Supp.2d 803 (N.D. Ill. 2011).

In this case, Defendants agree that Utah law applies to the defamation claims and its derivative claims as pled in Plaintiff's complaint, but that the defense of California's anti-SLAPP applies to this case as well.  Applying the law of different states depending on the issue presented in the same case is common.  Diamond Ranch Academy, Inc., 117 F.Supp.3d at 1322 (citing Johnson v. Continental Airlines Corp., 1059, 1062 n.4 (10th Cir. 1992)(noting *depecage* is the widely approved process whereby the rules of different states are applied on the basis of the precise issue involved)).

Plaintiff's complaint attests to the fact that both Defendants are residents of the county of San Diego.  (See Pl.'s Compl. at ¶¶3-5).  Therefore, there is no need for further clarification on Waddoups's issue number three.  More importantly, Plaintiff's complaint does not contest the obvious inference that the complained of speech also took place in San Diego, California. The liberal estimate of Defendants' Utah internet readership is placed at no more than 1%.  See Hydro Engineering v. Landa, Inc., 231 F.Supp.2d 1130, 1134 (D. Utah 2002)(explaining how 1.85% of that defendant's Utah customer base was not substantial, and it therefore weighed in favor of not finding of personal jurisdiction over Defendant).   Lastly, an internet article such as the one at issue in this case was not purposely directed at the state of Utah.  See Diesel Power Source, L.L.C. v. Crazy Carl's Turbos Inc., Case No.: 2:14-cv-00826, p.14 (D. Utah, March 10, 2015)(finding no purposeful direction under personal jurisdiction analysis for an internet article about a Utah corporation because the article was directed toward the internet audience at large).

As such, Defendants' residence per Plaintiff's complaint, the interest California has in protecting the rights of its residents, along with the evidence argued that the speech at issue was

authored and published in the state of California to a broad internet audience substantially weigh in favor of California's anti-SLAPP statute's application.

**B.  Defendants' Statements Regarding Plaintiff Are Acts in Furtherance of Free Speech Rights in Connection with a Public Issue Under California Code of Civil Procedure Section 425.16(e).**

A court first determines what activities are protected, in order to bring them within the scope of the anti-SLAPP statute.  Finton Constr., Inc. v. Bidna & Keys, (2015) 238 Cal.App.4th 200, 209.

Section 425.16 states that an "act in furtherance of a person's right of petition or free speech…in connection with a public issue" includes any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.  Cal. Code. Civ. Proc. Sec. 425.16(e)(3).  Websites accessible to the public are "public forums" for purposes of the anti-SLAPP statute.  Wong v. Jing, (2010) 189 Cal.App.4th  1354, 1366; Chaker v. Mateo, (2012) 209 Cal.App.4th 1138, 1146. Postings on the internet have been considered speech in a "public forum" by several courts in California.  See Wilbanks v. Wolk, 17 Cal.Rptr. 3d 497, 503 (2004) (quoting, "Wolk's statements are published in her web site on the Internet, meaning they are accessible to anyone who chooses to visit her web site.  As a result, her statements hardly could be more public."); see Wong v. Jing, 189 Cal. App.4th at 1366.  There is no question that Defendants make the showing that the tradingschools.org blog, the article, and its content are all statements made in a public forum, per Plaintiff's complaint.

Similarly, Defendants are able to meet this second threshold showing which is that the statements are matters of public interest.  Here, Defendants need only demonstrate that the article in question regarding Maverick Trading is about and concerning consumer information or consumer goods.  Under the Wilbanks case, which is still good law, the statements need not affect a large number of people.  Rather, the defendant's statements in that case were protected

because they concerned the goods and services of another.  Wilbanks 121 Cal. App.4th at 899.
Even in cases where potential consumers are warned against visiting or traveling to an arena,
courts have found grounds for the privilege to apply.  See Chaker v. Mateo, 209 Cal.App.4th
1138, 1146 (finding defendant who warned readers from attending a church due to concerns
about the pastor was providing aid to consumers in their choice, and therefore was an issue of
public concern).  The Ninth Circuit has held that "[u]nder California law, statements warning
consumers of fraudulent or deceptive business practices constitute a topic of widespread public
interest, so long as they are provided in the context of information helpful to consumers."
Makaeff v. Trump University, LLC, 715 F.3d 254, 262 (9th Cir. 2013).

Defendants' blog is only dedicated to reviewing trading products and services that are
offered to consumers at large.  Plaintiff's complaint alleges that numerous statements take aim at
the quality and price of Maverick Trading's products or services.  (See Pl.'s Compl. at ¶¶48, 52,
57, 1, 65, 69).  These are all statements that go to the alleged quality and business practices of
Plaintiff.  Further, Plaintiff states in their complaint that they are offering products, services,
including published works on a national or international level, including the internet.  Id. at ¶¶
21,22, 25-42.  Both the nature of Defendant's statements and the nature of Plaintiff's business
squarely fall into California's interpretation as matters of public interest.

Accordingly, the alleged defamatory statements fall into Section 426.16(e), and the
burden is therefore on Plaintiffs to demonstrate the probability of prevailing on the merits.

**C.  Plaintiff Cannot Prevail on the Merits Because Their Causes of Action Fall
Outside the Statute of Limitations.**

1. Plaintiff's claims for defamation are statutorily barred under the one-year

limitation and Single Publication Rule.

In Utah, the one year statute of limitations for defamation runs when the defamatory
statement is "known or is reasonably discoverable by plaintiff."  Allen v. Ortez, 802 P.2d 1307,

1314 (Utah 1990); Utah Code Ann. Sec. 78B-2-302(4).  However, defamation is reasonably discoverable as a matter of law, at the time it is first published and disseminated in a newspaper that is widely available to the public.  Russell v. Standard Corp., 898 P.2d 263, 264-65 (Utah 1995).  The notion that defamation is discoverable at the time of initial publishing, that it gives rise to one cause of action in the jurisdiction where the dissemination occurred, and that it results in one statute of limitations, is known as the "single publication rule."  Mineral Res. Int'l, Inc. v Trace Minerals Research, L.C., 565 B.R. 684, 693 (Bankr. Utah 2017).

In Mineral Res. Int'l, Inc., the court was faced with alleged defamatory statements published on a website and in subsequent emails.  Id. at 690.  The court reviewed Utah Supreme Court and Court of Appeals cases, and could not find a case that adopted or rejected the single publication rule.  Id. at 694.   The court applied the single publication rule, stating "This Court agrees and adopts Judge Campbell's reasoning in *Diamond Ranch Academy* on this issue as its own."  Id. (emphasis in original).

This case is no different than Mineral Res. Int'l, Inc. and Diamond Ranch Academy on the issue of the statute of limitations.  As mentioned above, both cases dealt with alleged defamatory publications on the internet and applied the single publication rule in Utah cases.  In this case, Plaintiff admits in the complaint that the statements amounting to their pled causes of action were published on the internet on March 27, 2017.  (See Pl.'s Compl. at ¶47).  Because the complaint also refers to tradingschools.org as the source of the alleged defamatory statements, this Court may consider the webpage www.tradingschools.org and the date of publication written on the pages for purposes of the statute of limitations.  Id. at 14-16, 20, 47; see Gorran v. Atkins Nutritionals, Inc., 464 F.Supp. 2d 315, 319, at n. 1 (S.D.N.Y. 2006)(permitting notice of a website on a motion for judgment on the pleadings where the website was incorporated by reference in the complaint).   Said date of publication is also listed as March 27, 2017. (See Dfs's RFJN, No. 3, at Ex. 2).

Regardless, Plaintiff later refers to the March 2017 statements as the "March 27, 2018 Review." (See Pl.'s Compl. at ¶47). There is no substantive purpose for the stylistic change or reference. Id. Plaintiff refers to the year 2018 instead of 2017 almost sixty times in its complaint and makes no allegation that any complained of statement was published in any year or month, other than March of 2017. To be clear, all statements made in and complained of in the complaint arise only from the article published on March 27, 2017, on tradingschools.org. Because Plaintiff filed its cause of action for defamation more than a year *after* March 27, 2018, all claims regarding defamation fail as a matter of law.

> 2. All of Plaintiff's remaining causes of action fail because they are derivative of Plaintiff's defamation claim.

All of Plaintiff's remaining causes of action are derivative of the elements and facts of Plaintiff's defamation claim, and therefore those causes of action fail as a matter of law as they are outside the one year statute of limitations period. Generally, the court views causes of action with defamation "underpinnings" under the one-year limitations period to prevent a plaintiff from drafting around the one-year limitation. Bates v. Utah Ass'n of Realtors, 297 P.3d 49 at ¶3 (Utah App., 2013)(quoting Jensen v. Sawyers, 2005 UT 81, ¶53 "'the statute of limitations for defamation governs claims based on the same operative facts that would support a defamation action.'"). When applying a statute of limitations analysis for claims with more than a one-year limitation, the court should evaluate the statute of limitations based on the essence and substance of a claim, instead of the claim's label. Jensen, 2005 UT 81, ¶34.

For example, interference with business relations requires that a plaintiff show that the defendant intentionally interfered with existing/potential economic relations by improper means which caused injury. Nunes v. Rushton, 299 F.Supp.3d 1216, 1236 (D. Utah, 2018). When defamatory statements form the sole basis for a plaintiff's interference claim, "the one-year statute of limitations applies." Diamond Ranch Academy, Case No.: 2:14-cv-00751-TC, ECF

No. 55, p. 38 (Feb. 17, 2016, D. Utah) (quoting <u>Nationwide Bi-Weekly Admin., v. Belo Corp.</u>,
512 F.3d 137, 146-147 (5th Cir. 2007)).    In addition, a claim for "false light" that is predicated
on the publication of a defamatory statement is subject to the same limitations as the defamation
claim.  <u>Nunes</u>, 299 F.Supp.3d at 1234-1235 (citing <u>SIRQ, Inc. v. The Layton Companies, Inc.</u>,
379 P.3d 1237, 1245 (Utah 2016)).

 Even in cases involving four or three-year statutory limitation periods, a court has found
that a plaintiff is subjected to the defamation one-year limitation.  <u>Mineral Res. Int'l, Inc.</u>, 565
B.R., at 691-693 (finding that even if a plausible unfair competition claim was pled, that the one
year statute of limitations in defamation applies given the same or similar operative facts of both
causes of action).  In <u>Mineral Res. Int'l, Inc.</u>, plaintiff claimed defamation and violation of
Utah's Unfair Practices Act.  <u>Id.</u> at 690-691.  The court opined the unfair competition claim is
based on the same operative facts that would support a defamation action given the plaintiff
addressed the same topic of the plaintiff's products in two separate statements that taken as a
whole, meant that the statute of limitations for defamation governed the unfair competition
claim.  <u>Id.</u> at 692-693; <u>see also</u> <u>SCO Grp., Inc. v. Novell, Inc.</u>, 692 F.Supp. 2d 1287, 1293 (D.
Utah 2010)(stating slander of title claims are subject to the First Amendment).

 Here, each and every cause of action in Plaintiff's complaint arises from the same set of
alleged defamatory acts—the publishing of the March 27, 2017, article on tradingschools.org.
Plaintiff's second cause of action for interference with prospective economic advantage cites to
the alleged defamatory statements in seven different paragraphs. (See Pl.'s Compl. at ¶¶108-
114).  The entire cause of action rests only upon the premise that, "[D]efendants published the
March 27, 2018 Review [sic] and its false statements to harm Plaintiff."  <u>Id.</u> at ¶108.  Plaintiff
then references the review several more times in its cause of action.

 Similarly, Plaintiff's causes of action for product disparagement, trade libel and false
light understandably all rely on the alleged defamatory statements as all of these causes of action

are largely inseparable from the tort of defamation.  For example, in paragraphs 117-119, Plaintiff refers to the March 27, 2017 review that "impugned the quality" of Plaintiff's products and services, that the statements were "derogatory" and "false."  Id.  Plaintiff's false light cause of action pleads facts nearly identical to those listed for defamation, namely that the March 27, 2017 review was published on the internet, that it was about Plaintiff and that it "casts the Plaintiff in a false light."  Id. at ¶¶138-141.

Plaintiff's fourth cause of action for trade libel is comprised of facts that only go to the alleged defamatory statements that Plaintiff complains of in its first cause of action.  Id. at ¶¶125-130.  Plaintiff states Defendants committed trade libel by publishing the article on the internet, with harmful statements, and that the statements were damaging.  Id. at ¶¶125-127. Similarly, Plaintiff's claims under the Utah's Truth In Advertising Law ("TIAA") fails because they are also derivative of a defamation claim. Plaintiff complains that Defendants "represented" and "disparaged" Plaintiff's goods or services under TIAA.  Id. at ¶¶133-134; See Utah Code Ann. Sec. 13-11a-(3)(1).  Because Plaintiff cannot maintain a cause of action under TIAA without an allegation of false or misleading statements, Plaintiff's cause of action should be held to the one-year limitation as well.

Plaintiff cannot escape the evident conclusion that all of its causes of action arise from the same set of facts of alleged defamation from the plain reading of their complaint.  As a matter of law, this Court should find that because all of Plaintiff's claims depend upon alleged defamatory statements, that all causes of action should adhere to the defamation one-year limitation.  To allow otherwise, would result in Plaintiff to be able to circumvent first amendment protections, such as the one-year limitation for defamation, by permitting Plaintiff's other causes of action.

/ / /

/ / /

**D.  Plaintiff's Causes of Action Fail Because There are Insufficient Facts to Allege the Degree of Necessary Fault and Because the Alleged Defamatory Statements Do Not Comply With Fed. R. Civ. P. 8(a)(2).**

The elements of defamation in Utah require the plaintiff to show "that defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, *that the statements were published with the requisite degree of fault*, and that their publication resulted in damage." World Wide Association of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1136 (10th Cir. 2006)(emphasis added).  The tenth circuit has stated that pleadings must state facts for relief that is plausible on its face in order to survive a Rule 12(b)(6) motion.  Safe Street Alliance v. Hickenlooper, 859 F.3d 865, 878 (10th Cir. 2017).  A mere label or conclusion will not suffice as the plaintiff must offer specific factual allegation to support each of their claims.  Id. (citing and quoting from Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A pleading that merely states that defamatory statements were made with the requisite degree of fault does not state a sufficient claim.  Rusk v. Fid. Brokerage Serv., LLC, Case No.: 2:15-cv-00853-JNP p. 12 (D Utah, March 29, 2018).  Thus, a plaintiff must plead facts that at least a defendant was negligent as to the truth.  Id. (finding plaintiff met this burden by pleading specific facts and motivations for the plaintiff's alleged wrongful termination).  In claims such as injurious falsehood to property, a plaintiff must prove that a defendant published statements with actual knowledge of the falsity.  See Dillon v. S. Mgmt. Corp. Ret. Trust, 326 P.3d 656, 666-667 (Utah 2014).

At paragraph eighty-seven in Plaintiff's complaint, Plaintiff states, "The defendants acted with intent and actual malice when they engaged in the foregoing conduct because they intended to harm the plaintiff."  At no point does the complaint state any facts that even allege any investigation, discovery, communication, research of facts indicating "ill will" that Defendants

15

may have allegedly had towards Plaintiff, or for disregard for the truth in writing the alleged defamatory statements.  As such, Defendants argue that Plaintiff failed to plead facts sufficient for Defendants' alleged fault, and therefore the claims cannot survive.

In addition, Fed. R. Civ. P. 8(a)(2) requires that a plaintiff state its claims intelligibly so as to inform the defendants of the legal claims being asserted.  Rusk, Case No.:  2:15-cv-00853-JNP p. 3. (citing Mann v. Boatright, 477 F.3d 1140, 1148 (10th Cir. 2007)).  This is necessary in order to give notice to the defendant for the preparation of his or her defense.  Id. (citing Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007)).  Failure to comply may result in dismissal of the complaint with prejudice under Fed. R. Civ. P 41.  Id. at p. 4.

In this case, Plaintiff did not give the benefit to the Court or Defendants when it failed to provide the article that was written on tradingschools.org or actual quotes from the article.  With the exception of perhaps paragraph 48, none of the alleged defamatory "statements" are even purported to be from the article itself.  Instead, paragraphs 52, 57, 61, 65, 69, are Plaintiff's summaries with only two or five alleged words from the 2017 article itself.  Plaintiff is obligated to plead specific statements that are allegedly defamatory.[1]  Otherwise, Defendants are in the position to expend needless time and energy to determine the accusations against them.  As such, this Court should find that Plaintiff failed to plead facts and claims that give notice to Defendants, and therefore should dismiss Plaintiff's defamation cause of action and all the derivative causes of action as well.

/ / /

/ / /

/ / /

---

[1] Defendants concede that Plaintiff listed in a block quote approximately twelve sentences in paragraph 76 of their complaint.  However, inserting paragraphs of statements in a complaint does not meet the requirement of Rule 8(2)(a).  Moreover, Defendants contend paragraph 76 has been addressed and that the remainder sentences are so clearly not tortuous to as to warrant attention.

**E.  Plaintiff Cannot Prevail on Their Causes of Action Because the Statements Alleged Are Subject to First Amendment Protection and Are Not Defamatory on Their Face, Are Opinion or Hyperbole, or Are Substantially True.**

As noted supra *Section III(C)(2),* claims arising from defamation are subject to First Amendment protection. SIRQ, Inc. v. The Layton Companies, Inc., 379 P.3d at 1237 (stating false light claims arising from defamatory speech raise the same First Amendment concerns that are implicated with defamatory speech).  Whether or not a statement is able to sustain a defamatory meaning is a question of law.  Nunes, 299 F.Supp.3d 1216, 1233 (D. Utah 2018)(citing West v. Thomson Newspapers,  872 P.2d 999, 1008 (Utah 1994)).  Even an alleged statement of fact can only be defamatory if the asserted facts themselves are defamatory.  Id.  A publication is not defamatory just because it is embarrassing to a plaintiff or even because it makes a false statement about a plaintiff.  Id.  (citation omitted).  Even purportedly factual statements can be exempt because they are substantially true.  Bustos v. A & E Television Networks, 646 F.3d 762, 764 (10th Cir. 2011)(noting inaccuracies are not falsity so long as the gist or the sting of the libelous charge is justified).

Utah courts have also protected speech that is opinion.  In determining whether a statement is opinion, the courts must look to the content and context.  Nunes, 299 F.Supp.3d at 1231.  The court in Nunes, for example, highlighted a case where defendant "'posted a review in an online forum describing [his landlord] as 'crooks' that 'will take full advantage of you!'"  Id. (citing Westmont Residential LLC v. Buttars, 340 P.3d 183, 185 (Utah Ct. App. 2014)).  The court in Westmont Residential LLC held that the statement was not to be taken literally and that the statement was no more than rhetorical hyperbole.  Id.  The court in Nunes concluded that the allegations of plaintiff's fundraising being a "fraud," a "hoax," and a "scam" were not imputed with enough specific criminal conduct, and ultimately found that the statements were opinion or rhetorical hyperbole.  Id. at 1231-1232.

Plaintiff's complaint states, "*The March 27, 2018 Review stated that 'Maverick Trading takes no financial risk of losses with any trader.*'" (See Pl.'s Compl. at ¶48). This statement is immune from a defamation cause of action because it is opinion. The author is clearly giving his opinion on a matter of public interest, Plaintiff's products and services, to an interested readership. Although there is no context to the quoted material, the conclusion that the words quoted are opinion is undeniable. In addition, the statement can be interpreted as non-slanderous because not taking financial risk is a valid business model on its face. Therefore, the quoted material cannot be defamation per se.

Plaintiff's complaint states, "*The March 27, 2018 Review falsely states that Maverick Trading's educational training as a 'marketing gimmick.*'" <u>Id.</u> at ¶52 Although there is no context or content listed other than "marketing gimmick," these words of themselves are that of opinion and rhetorical hyperbole. A reasonable reader could not conclude that Defendants are making criminal allegations of fraud or criminal misuse of funds. Rather, Defendants state their opinion in a colorful manner that is protected under Utah law.

Plaintiff's complaint states, "*The March 27, 2018 Review falsely states that traders must pay 'over $10,000-per-year to essentially watch someone trade.'*" <u>Id.</u> at ¶57. First, the quoted words without context are not injurious to Plaintiff on its face. Secondly, Plaintiff's complaint supports the conclusion that the quoted words are substantially true. Plaintiff's complaint admits that a trader pays $8,189.00, for the first year of trading, plus $199 in a monthly "Desk Fee." <u>Id.</u> at ¶¶ 35-37. This total amount for a year is roughly $10,000.00, per Plaintiff's statement above, and as such, the quoted material cannot form the basis of a defamation claim because it is substantially true.

Plaintiff's complaint states, "*The March 27, 2018 Review falsely states that Maverick Trading gives 'away free money to trade.*'" <u>Id.</u> at ¶61. This statement is not injurious on its face without any context because it would not be considered harmful to Plaintiff to give a trader easy

money to trade.  Further, the quoted material of giving "away free money to trade" is a hyperbolic one of opinion that no reader would think is a statement of fact on its face.

Plaintiff's complaint states, "*The March 27, 2018 Review falsely states that the $199-per month Desk Fee is paid without a return and as an effort to unnecessarily obtain 'money for nothing' from traders.*" Id. at ¶65.  Without context, Defendants are at a disadvantage in combating the legal sufficiency of the words "money for nothing," without more.  Regardless, Plaintiff's complaint states in paragraph thirty-six that "Desk Fees pay for access to Maverick Trading's electronic infrastructure, continuing education, ongoing coaching, supervision and support."  From their own complaint, this money is demanded without return, making the import of the paragraph substantially true with respect that the Desk Fee is not returned.  Further, the words "money for nothing" is a common hyperbolic statement.  Lastly, the author was simply stating as a matter of opinion that supplying the desk fee was for nothing in return.  As such, this statement in Plaintiff's complaint does not give rise to a cause of action for defamation.

Plaintiff's complaint states "*The March 27, 2018 Review also states that traders must "give" the firm and additional $5,000.00*," and that this "statement" is false.  Id. at ¶¶69-70. The word "give" cannot be considered defamatory, and Plaintiff's statement in the complaint is not defamatory on its face because it is not injurious.   More importantly, Plaintiff's complaint states at paragraph thirty-nine that, "Maverick Trading also requires traders to make a $5,000.00 risk Capital deposit that remains on the traders' balance sheet as an asset and on Maverick Trading's balance sheet as a liability."  Because traders are "required to make" a deposit, the word "give" is substantially similar and therefore substantially true given Plaintiff's own complaint allegations.  Arguably, the word "give" is less injurious and less specific than Plaintiff's factual allegation that persons are "required to make a deposit."

Because the alleged statements are not defamatory, all of Plaintiff's causes of action fail.

**F.  Plaintiff's Cause of Action for Violation of Utah's Truth in Advertising Statute Fails as a Matter of Law.**

Plaintiff's cause of action for violation of Utah's Truth in Advertising statute fails as a matter of law because Plaintiff has not pled that it abided by the statutorily-mandated waiting period and meet and confer requirements, because Defendants did not publish an "advertisement" and is not a "supplier" as defined by statute, and because Defendants are exempted by the statute.

In Proctor & Gamble, Co. v. Haugen, the defendant submitted a Rule 12(b)(6) motion on the issue of plaintiff's cause of action in Utah's Truth in Advertising Act ("TIAA").  947 F.Supp. 1551, 1554-1555 (D. Utah 1996)(aff'd 222 F.3d 1262 (10th Cir. 2000)); Utah Code Ann. Sec. 13-11a-1.  The TIAA requires that before filing suit, the plaintiff must notify the defendant of the alleged violation and provide the defendant an opportunity (ten days) to make a correction in the same media as the allegedly violating "advertisement."  See id. at 1555; Utah Code Ann. Sec. 13-11a-(4)(5).  The court agreed with defendant that because the plaintiff did not allege facts that satisfy the statute's notification precondition in their complaint, that the injunctive relief sought and monetary damages could not be recovered.  Id. at 1555-1556. The cause of action therefore failed as a matter of law.  See id.  The court also denied plaintiff's request to consider a correction notice because it deals with facts outside of the complaint.  Id. at 1555 n.5.

In addition, the notice requirement outlined *supra* references that a defendant has the opportunity for a correction notice of the "allegedly violating advertisement." Utah Code Ann. Sec. 13-11a-(4)(5).  An advertisement is defined by statute in part as "[a]ny written, oral, or graphic statement or representation made by a *supplier* in connection with the solicitation of business."  Id. at 13-11a-(2)(1).  A "supplier" is defined as "[a] seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces sales transactions."  Id. at Sec. 13-11a(2)(17). Further, the TIAA exempts its application from, "[p]ublishers, broadcasters,

printers, or *other persons engaged in the dissemination of information*…."  Utah Code Ann. Sec. 13-11a-(5)(2)(emphasis added).

In this case, Plaintiff makes no mention in their complaint that they abided by the TIAA's mandatory notice procedures and requirements.  Plaintiff was required to not only give notice and an opportunity for Defendants to correct, but also wait ten days before they could file their cause of action under TIAA, and plead as much in its complaint.  For the reasons articulated in Proctor & Gamble, Plaintiff's cause of action under TIAA fails.

In addition, Plaintiff's complaint makes no suggestion that Defendants' online article was an advertisement used in the solicitation of business, nor do they allege any fact that Defendants are involved in any way with sales transactions.  As such, it is implausible to reach the conclusion that Defendants issued an "advertisement," or that either Defendant was a "supplier."  In fact, Plaintiff alleges that Defendants supplied information by means of tradingschools.org's website, on the internet, regarding the Plaintiff's services and products. (See Pl.'s Compl. at ¶¶47, 51, 132-134).  Therefore, Plaintiff's complaint supports the finding that Defendants are exempt from the TIAA because they are, "other persons engaged in the dissemination of information…."  See Utah Code Ann. Sec. 13-11a-(5)(2).  As a result, this Court should find that on the basis of plaintiff's complaint, Defendants are exempted by the plain language of the TIAA and that even if they are not exempted, there are insufficient facts to allege that Defendants were engaged as a supplier in an advertisement.

**G.  Should Defendants Prevail on All or Even Part of Their Motion, Attorney Fees Are Mandatory.**

Under California's anti-SLAPP statute, Section 425.16(c) permits recovery of attorney fees for the prevailing party.  A defendant who partially succeeds in a California anti-SLAPP motion is considered the prevailing party, unless the results were "minimal" such that the moving party did not achieve any practical benefit from bringing the motion.  Mann v. Quality

Old Time Service, Inc., 139 Cal.App.4th 328, 340 (2006).  Furthermore, the ninth circuit court of appeals recently decided that even if a motion under California's anti-SLAPP is based on legal conclusions from a plaintiff's complaint, such as that in a Rule 12(b)(6) motion, that courts can still invoke the attorney's fee provision under Sec. 425.16(c).  See Planned Parenthood Fed'n of Am., Inc., 890 F.3d at 834.

Therefore, should Defendants prevail on all or any part of their motion under California's anti-SLAPP statute, they request the opportunity to put forth an attorney fee motion before this Court for its consideration.

## IV.  ALTERNATIVELY THE COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(6).

This Court may dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  As noted *supra Section III(D),* a complaint must contain enough facts to state a claim to relief that is plausible on its face and the right to relief above the speculative level.  Bell Atl. Corp., 550 U.S. at 570.  A plaintiff's claim meets the plausibility threshold when he or she "pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Therefore, if this Court should find that California's anti-SLAPP statute somehow does not apply, then the Court should dismiss Plaintiff's complaint because Plaintiff has not pled and will never be able to plead a valid claim under the laws of Utah for defamation and its derivative claims.

## V. CONCLUSION

Defendants respectfully request that this Court apply California's anti-SLAPP statute under its choice of law analysis.  Because Plaintiff's claims are insufficient to sustain a cause of action under the one-year limitation given the allegations in its complaint, all of their causes of

action fail.  Plaintiff's causes of action also fail because there are insufficient statements to sustain all of their causes of action.  Lastly, Defendants request attorney fees for the expense of bringing its defense and response to Plaintiff's complaint.

Dated:  September 3, 2019

_/s/ Susanne Arani___
Susanne G. Arani, Esq.
799 Fieldstone Lane
Encinitas, CA  92024
(760) 331-8426
*Admitted Pro Hac Vice*
Attorney for Emmett Moore, and
Tradingschools.org

**<u>Certificate of Service</u>**

       I herby certify that  on the 3rd day of September, 2019,  I caused a true and correct copy of this service of  **DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND CALIFORNIA'S SPECIAL MOTION TO STRIKE** to be filed via the Court's CM/ECF Filing System which sent notification of such filing on the following:

Charles Lee Mudd Jr. (cmudd@muddlawoffices.com)
Mudd Law Offices
311 Main Street
PO Box 1553
Park City, Utah 84060
Attorney for Plaintiff

Susanne Arani (susarani@gmail.com)
799 Fieldstone Lane
Encinitas, California  92024
Attorney for Defendants

Matthew Morrison (matt@oremlawoffice.com)
Morrison Law Office
1887 N 270 E
Orem, UT  84057
Attorney for Defendants

                   ___/s/ Susanne Arani_____
                   Attorney for Defendants
                   Tradingschools.org and
                   Emmett Moore